LORD v. WINNINGHAM.

1. MASTER AND SERVANT—WITHHELD PAY—ASSUMPSIT—INSTRUC-
TIONS—SCOPE OF INQUIRY BY JURY—GREAT WEIGHT OF THE EVI-
DENCE.

In assumpsit for amount claimed to have been withheld by plain-
tiff's employer over a period of over 12 years under alleged
agreement whereby such balance of monthly wages was to be
paid plaintiff upon termination of employment, it was re-
versible error for court to charge jury in such a way as to
enlarge the scope of inquiry as to when the agreement modify-
ing the wages was entered into that was broader than that
fixed by the testimony, especially where it is a close question
as to whether or not the verdict of the jury is against the
great weight of the evidence.

2. TRIAL—INSTRUCTIONS.

An instruction which assumes the existence of certain facts, or
of evidence tending to prove them, when in fact there is no
such evidence, is erroneous and should not be given.

Appeal from Oakland; Hartrick (George B.), J.
Submitted October 6, 1943. (Docket No. 37, Cal-
endar No. 42,513.) Decided November 29, 1943.

Assumpsit by Luther C. Lord against C. C. Win-
ningham for back wages. Verdict and judgment for
plaintiff. Defendant appeals. Reversed and new
trial granted.

Glenn C. Gillespie and Carl A. Braun, for plain-
tiff.

Patterson & Patterson, for defendant.

NORTH, J. In this suit for the recovery of wages alleged by plaintiff to have been withheld by defendant, plaintiff upon trial by jury had a verdict for $3,720. Defendant's motion for a new trial was denied. Judgment was entered and defendant has appealed.

In May, 1924, defendant employed plaintiff as his chauffeur, assistant gardener, and general utility man to render services on or about defendant's premises. A written memorandum prepared by defendant, but not signed by either party, outlined the general scope of plaintiff's duties and stated that he was to receive as compensation $90 for the first month and $100 per month thereafter. This memorandum also provided that plaintiff was to have living quarters in defendant's garage. Plaintiff and his wife moved into the living quarters, and he entered upon the employment which continued until September, 1942, although defendant claims there was some break in the continuity of such service; but this and some other factual aspects of the case we consider unimportant for our decision on this appeal. Beginning with the second month of his employment plaintiff received $100 per month until March, 1930, but thereafter he received only $75 per month. Plaintiff claims that this reduction in the amount he received each month was in consequence of defendant having told plaintiff that the difference of $25 per month would be withheld by defendant and paid in a lump sum to plaintiff at any time the employment was terminated. It is not claimed that this withholding agreement was reduced to writing. And although plaintiff testified that he inquired of defendant about the withheld pay on one or two occasions, he made no definite demand for payment of the accumulated amount withheld at any time dur-

ing the subsequent long period of his employment. In September, 1942, defendant discharged plaintiff, although there is testimony quite clearly indicating that plaintiff at the time was planning to quit. On September 15, 1942, plaintiff's wife wrote a letter for plaintiff to the State labor board (department of labor and industry) claiming there were back wages to the extent of $3,675 and accrued interest due and unpaid from defendant to plaintiff. Seemingly it was this letter which came to defendant's attention that caused him to discharge plaintiff. Plaintiff was uneducated and, except to the extent of writing his name, was unable to read or write. It is this circumstance in consequence of which the above-mentioned letter was written by plaintiff's wife but signed by plaintiff.

Plaintiff kept no account of his dealings with defendant, but plaintiff's wife testified that from month to month she made a record of the unpaid portion of plaintiff's wages, although on cross-examination she admitted that the account presented in court was only a copy of the original which she testified she had previously destroyed. The controlling issue in the case was presented by defendant's denial of there having been any agreement relative to withholding a part of plaintiff's wages which were to be paid subsequently in a lump sum. Instead defendant claimed there was an agreed or mutually accepted reduction in plaintiff's wages, and that he had been paid in full from month to month during the period of his employment. In plaintiff's letter, written by his wife, to the labor board it was stated:

"And then in 1930 when the depreshion came on he did not say anything to me only he held back $25 per month ever since March 1, 1930. I thought he was saving it for me so I would have something when my wife and I get old."

In his testimony plaintiff was not able to fix with any degree of particularity the time when the alleged agreement upon which he relied was entered into between him and defendant. In substance plaintiff testified that the withholding arrangement was made "in 1930 or the year after." But plaintiff's wife was very definite in her testimony that this new arrangement occurred in the first part of February, 1930. With this status of the record at the close of plaintiff's case, defendant's attorney in outlining the defense to the jury stressed defendant's proof would show that such an arrangement could not have been made in the early part of February, 1930, because "both Mr. and Mrs. Winningham (who died prior to trial) were in California in February, 1930, and they didn't get back here until close to the first of March of 1930." And in concluding his opening statement to the jury the attorney said: "so there is but one issue in this case  *  *  *  and that is, was there an agreement *in the first part of February, 1930,* as testified to by Mrs. Lord, wherein Mr. Winningham promised to pay Luther $25 a month, that is withhold $25 from his wages and pay it to him when their relationship as employer and employee terminated."

The contention of the defendant above outlined as to his being in California during February, 1930, at least until February 22d, and therefore the alleged arrangement could not have been made in the early part of February of that year, was definitely testified to by both the defendant and his daughter. Evidently with the controlling aspect of this phase of the case in mind, defendant's attorney requested the court to charge the jury as follows:

"I charge you as a matter of law that in order for the plaintiff to recover in this case, you must find as a matter of fact by a preponderance of the evidence

that defendant Winningham promised, as claimed by the plaintiff, *in the first part of February, 1930*, to withhold $25 a month from plaintiff's salary and pay it to him when the employment of plaintiff by the defendant ended,. and if you do not find from a preponderance of the testimony that such an agreement was made by defendant Winningham, then plaintiff cannot recover and your verdict must be no cause for action."

While charging the jury the circuit judge stated: "Defendant has offered his suggestion as to the law in regard to that particular (the arrangement to withhold $25 per month) and the defendant's request to charge is as follows," and thereupon the court read to the jury the above-quoted request. But the court immediately thereafter stated to the jury the following:

"You have heard the testimony here in regard to that, that is whether or not it was made *the last part of February or first part of March*. In any event there must have been an agreement of some kind on or about the time the wages were changed from $100 to $75 to the effect there would be a withholding of $25 per month, you must find that such an agreement was in existence in order to find for the plaintiff."

By charging the jury as last above noted, the judge submitted a scope of inquiry for determination which was much broader than that fixed by the testimony in the case; and which left it open for the speculation of the jury as to whether or not the alleged agreement might not have been made "in the first part of March;" whereas the record on which plaintiff relied and the testimony which was met by the defendant was confined, as was defendant's request to charge, to the "first part of February, 1930."

While it may not be said in every case that reversible error is committed by the giving of a charge which submits to a jury a field of determination which is somewhat broader than the testimony in the case would justify, we are of the opinion that in the instant case reversible error resulted from this error in the court's charge. From details of the record which we deem it unnecessary to embody in this opinion, it is a close question whether or not, as appellant asserts, the verdict of the jury was against the great weight of the evidence. While we deem it unnecessary to place decision on that ground, we are constrained because of that circumstance to check more closely the accuracy of the charge of the court as applied to the testimony in the case. In doing so, we find in the instant case that by submitting to the jury a field of inquiry which was not within the testimony the right of defendant to a fair trial was invaded and prejudicial error committed.

"An instruction which assumes the existence of certain facts, or of evidence tending to prove them, when in fact there is no such evidence, is erroneous and should not be given. 64 C. J. p. 785." *Fortner* v. *Koch*, 272 Mich. 273, 283 (38 N. C. C. A. 334).

Other questions presented on this appeal are of such character they are unlikely to occur upon a retrial and for that reason are not herein considered. For the reason hereinbefore indicated the judgment entered is reversed and a new trial granted. Costs of this Court to appellant.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.