HUMMEL *v.* CITY OF GRAND RAPIDS.

MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALK—DIRECTED VERDICT
—EQUALLY DIVIDED COURT.
   In action against city for injury sustained by pedestrian when
   her foot was caught under a lifted flag of sidewalk, directed
   verdict and judgment for defendant on ground that it was
   not negligent in maintaining the sidewalk is affirmed by an
   equally divided court (1 Comp. Laws 1929, § 4223).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted June 6, 1947. (Docket No. 45, Calendar No. 43,765.) Decided January 5, 1948.

Case by Julia Hummel against City of Grand Rapids for injuries sustained when she stubbed her toe on a rise in the sidewalk. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed by an equally divided court.

*Harrington, Waer & Cary* and *Charles M. Owen,* for plaintiff.

*F. Roland Allaben,* City Attorney, *John F. Livingston,* Deputy City Attorney, and *Kenneth T. Hayes,* Assistant City Attorney, for the defendant.

SHARPE, J. *(for reversal).* This is an appeal in a personal injury case from a judgment for defendant entered on a directed verdict.

Plaintiff, a woman of mature years, and a companion were walking south on Ionia avenue, S. W., Grand Rapids, on the 11th day of February, 1946, at about the hour of 10 to 11 a.m. The day was windy, dark and snow was blowing and drifting in spots. There were some ice spots on the sidewalks. At a point adjacent to 952 Ionia avenue there was a driveway crossing the sidewalk with a curb running from the sidewalk to the street. The defective place in the sidewalk was located about six inches to the south of the south margin of the driveway. While walking on the sidewalk, plaintiff saw the driveway and passed over it. She stubbed her toe on a rise in the sidewalk, fell on her left knee, and broke her left kneecap.

March 26, 1946, plaintiff gave notice to the city of Grand Rapids of her injury in the following language:

"I was tripped by an obstruction on the sidewalk while walking south on the east sidewalk on Ionia avenue, S. W., in the city of Grand Rapids, Michigan, which was caused by the raising of a flag on the sidewalk by the roots of a tree nearby. I fell on the sidewalk and fractured the kneecap on my left leg."

Defendant city declined to recognize and adjust plaintiff's claim and on November 22, 1946, she instituted the present action. Defendant city filed an answer to the declaration in which it denies it disregarded any duty in regard to said sidewalk and

asserts that plaintiff's declaration is not in conformity with her original claim. The cause came on for trial and at the conclusion of plaintiff's proofs the city attorney made a motion for a directed verdict on the ground that plaintiff had not established any negligence on the part of defendant city; that plaintiff had not established she was free from contributory negligence; and that plaintiff's written claim as originally filed with the city commission is at variance with her declaration and with one Meyers' testimony.

The trial court granted defendant's motion on the theory that there was no negligence on the part of the city in the maintenance of the sidewalk at the time and place of plaintiff's injury. In an opinion he stated as follows:

"There has been no testimony from witnesses who visited the scene of the accident, who took measurements of it, that is that the edge of the walk was an inch and three quarters higher than the surface of the adjoining walk, no one has testified as to any opening under the edge of the sidewalk, as to the extent of it, as to the size of it, the width of it or the depth of it, upon which a jury could speculate or shall we say consider, to determine whether or not that defect was of such character as to be liable to cause injury to a pedestrian. * * *

"There isn't any question, so far as cases of this nature are concerned, that Michigan is dedicated to the rule that the city is only bound to keep its streets in a reasonable state of repair, and it is only where the defect or depression is such that in and of itself it is specially calculated to result in injury to pedestrians. There isn't anything about the nature of the defect that has been described in this case or that has been revealed by the photographs that have been taken and have been presented, that this depression was of such nature that an ordinary careful and

prudent man in observing it would say that it was specially dangerous and calculated to injure pedestrians. So far as the testimony is concerned it indicated that a piece of sidewalk had been raised above the level of the surrounding sidewalk. The testimony is that the maximum extent is an inch and three-quarters.

"Under the circumstances it is the duty of the court * * * to say that so far as the proofs are concerned, plaintiff having rested, she has failed to maintain and sustain the burden of proof and that the court does not find that the nature of the defect which is relied upon was of such a character that the jury should be allowed to speculate as to its dangerous character."

Plaintiff appeals and urges that the negligence of the city of Grand Rapids presented a jury question; that plaintiff was not guilty of contributory negligence as a matter of law; and that there was no material variance between plaintiff's original claim filed with the city of Grand Rapids and her declaration filed in the instant case.

We shall first discuss the question of the negligence of the city in maintaining its sidewalk upon the occasion complained of.

The liability of a city to a person injured by reason of the failure of the city to keep its sidewalks in reasonable repair is found in 1 Comp. Laws 1929, § 4223 (Stat. Ann. § 9.591), which provides:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert,

and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction.''

Plaintiff relies upon *Cornell v. City of Ypsilanti,* 212 Mich. 540. In that case plaintiff while walking on a sidewalk caught her foot on a projecting edge of the sidewalk. She testified as follows:

''We were walking along not at a fast pace, we knew we had lots of time for the car and were in no hurry and were just talking along and I know I stepped down and when I went to take this foot forward it was caught and this knee bent and I fell forward on my face, my left foot caught. I couldn't move it, when I went to pick it up to move it forward it was caught, I went to bend this knee and I couldn't and fell forward.''

In affirming a judgment for plaintiff, we said:

''We reach the conclusion that while a municipality is not liable, as matter of law, for slight depressions in its sidewalks, such depressions may be of such size, shape and character as to make the question one of fact, and that where the evidence tends to establish that the depression is of such size, shape and character as to form a trap in which the pedestrian's foot may be caught and held a question for the jury under proper instructions is presented. Plaintiff under this rule made a case for the jury.''

In the case at bar plaintiff testified as follows:

''I was ahead, I see the driveway but didn't see this here, I stubbed my toe on. When I stubbed my toe, my foot went back under me. My left knee was injured.   *   *   *

''*Q.* What happened that your foot went back under you?

"*A.* I stubbed my toe.

"*Q.* Now, then, was your foot held over, back?

"*Mr. Allaben:* I object to counsel leading.

"*A.* No, it went back under me. * * *

"*Q.* So you really don't know what caused you to fall?

"*A.* No, I stubbed my toe. * * *

"When the officer asked what happened, I probably told him I stubbed my toe and fell. Mr. Meyers told the police officers that I had stubbed my toe and had a fall.

"*Q.* And that is what did happen, didn't it?

"*A.* Yes, sir. * * * I didn't see what I stumbled on. I couldn't tell where it was. * * * I seen the drive, but I didn't see where I stubbed my toe."

However, her companion William Meyers testified that plaintiff stubbed her toe on the "shingle," that she had about two inches of her shoe underneath the lift; that when he picked her up she could not move her foot; and that her shoe was right there underneath the "shingle."

If there was no other testimony than that given by plaintiff, personally, such testimony would preclude recovery on the issue under consideration, but upon a motion by defendant to direct a verdict testimony most favorable to plaintiff, whether given by herself or witnesses in her behalf, must be accepted.

In *Bullen* v. *Wakefield Crushed Stone Co.,* 235 Mich. 240, we said:

"Some of the witnesses gave testimony of little probative value, not sufficient, standing alone, to make plaintiff's case, but, upon a motion to direct a verdict for defendant, the testimony most favorable to plaintiff, and all of it, must be accepted, and the fact that one witness did not make plaintiff's case in its entirety did not require the rejection of his testimony, where, coupled with other testimony,

it had a tendency to establish plaintiff's case. A party is not required to make his case by a single witness, and frequently the strongest cases are made by dovetailing together bits of testimony found here and there in the record, some bits appearing inconsequential, considered alone, but, when considered with other facts, bring conviction to the mind of the average juror.''

The testimony of Meyers that plaintiff had about two inches of the toe of her shoe underneath the lift in the sidewalk is some evidence that a trap, or condition existed in the sidewalk which presented a jury question on whether such defect was of such a nature that negligence of the city of Grand Rapids could be predicated thereon. The trial court was in error in failing to submit this question to a jury.

Defendant urges that plaintiff was guilty of contributory negligence as a matter of law. Assuming that there was a ledge in the sidewalk, as testified to by witness Meyers, we cannot say that plaintiff was guilty of contributory negligence as a matter of law in failing to see it under the circumstances of this case.

Defendant urges that there is no proof in the case that the alleged defect existed for a period of 30 days or more prior to plaintiff's accident. The facts in this case show that one witness testified that during the summer of 1945 she made some repair to the sidewalk where plaintiff stubbed her toe. Another witness testified that around Easter time in 1945 she rode her bicycle over a bump at the place in question.

The statute relating to notice is found in 1 Comp. Laws 1929, § 4228 (Stat. Ann. § 9.596), and reads as follows:

''If said public highway, street, bridge, sidewalk, crosswalk or culvert is in a condition which is not reasonably safe and fit for travel either by persons,

animals or vehicles, because of defects in the original construction, then it shall not be necessary to show that any notice thereof was brought to the attention of such township, village or city, before a recovery can be had. If the defect is caused by said highway, street, bridge, sidewalk, crosswalk, or culvert becoming out of repair, it shall be conclusively presumed that the township, village or city had notice thereof and a reasonable time in which to repair the same, provided said defect has existed for a period of thirty days or longer.''

In *Wilkinson* v. *City of Grand Rapids,* 228 Mich. 120, we had occasion to construe this act. We there said:

''Under this section of the statute the plaintiff has fully met the requirements of the law as to notice when she has shown that the defect complained of existed for a period of 30 days or longer. From that fact arises a conclusive presumption that the city had notice of the defect and a reasonable time in which to repair it.''

Whether or not the alleged defect existed for a period of 30 days or longer presented a question of fact and should have been presented to the jury.

It is next urged that there is a fatal variance between plaintiff's original claim and her declaration filed in the instant case. The notice of injury filed with the city commission stated:

''I was tripped by an obstruction on the sidewalk while walking south on the east sidewalk on Ionia avenue S. W., in the city of Grand Rapids, Michigan, which was caused by the raising of a flag on the sidewalk by the roots of a tree nearby. I fell on the sidewalk and fractured the kneecap of my left leg. * * *

''The defective sidewalk was immediately in front of #952 Ionia avenue S. W., * * * the home of Mrs. Julia Lawson.''

A list of the names and addresses of witnesses was added to the notice given.

Section 4230, 1 Comp. Laws 1929 (Stat. Ann. § 9.598), provides in part:

"The notice will specify the location and nature of said defect, the injury sustained, and the names of the witnesses known at the time by claimant."

The declaration filed by plaintiff stated:

"4. Yet the said defendant, not regarding its duty in that behalf, did not, on the date hereinafter mentioned, and long prior thereto, keep the sidewalk heretofore described, in reasonable repair and in condition reasonably safe and fit for travel, but permitted to exist on said sidewalk a dangerous cavity and obstruction, to-wit, said sidewalk was broken and a depression existed thereon leaving the edge sharp, raised and overhanging in such a manner as to cause a hazardous and dangerous condition to pedestrians walking over it in a southerly direction. That defendant, for a long time prior to the occurrence hereinafter set forth, had actual as well as constructive notice of such broken and dangerous condition."

In *Ridgeway* v. *City of Escanaba,* 154 Mich. 68, we said:

"We have been inclined to favor a liberal construction of statutes requiring notice of claims, and have not denied relief when by any reasonable interpretation the notice could be said to be in substantial compliance with the statute, or where the defect had been waived by the council."

See, also, *Pearll* v. *City of Bay City,* 174 Mich. 643.

In *Griffin* v. *Town of Ellenburgh,* 171 App. Div. 713 (157 N. Y. Supp. 813), it is said:

"The purpose of the notice is to fairly apprise the officers of the town of the nature and circum-

stances of the accident, so that they may investigate the same fully and intelligently and with certainty as to the place and conditions of the accident, so far as the facts are concerned, with a view to making either an appropriate settlement of the claim or an effective and intelligent defense of the action, and if the notice serves that purpose the requirement of the statute has been effectuated."

See, also, *Knapp* v. *City of Detroit,* 295 Mich. 311.

In the instant case plaintiff gave written notice of her injury within the 60 days required by statute, together with a list of witnesses. At a hearing before a committee of the commission, some of these witnesses gave testimony including the witness Meyers. In our opinion plaintiff was not required to state her claim in the notice with the formality and completeness required in her declaration, nor to produce proofs in greater detail before the commission than it desired. We do not think the variance between plaintiff's original notice and her declaration amounts to a change of theory upon her part. The declaration gives more detail of how the accident occurred, but both the notice and the declaration are based upon the fact that plaintiff "stubbed her toe" by reason of a defect in the sidewalk.

The trial court was in error in directing a verdict for defendant. A jury should have passed upon the questions of whether or not there was a "trap" as claimed by plaintiff and, if so, whether it had existed for a period of 30 days or longer. The jury should also pass upon the contributory negligence of plaintiff in failing to see the defect and the negligence of defendant in permitting such condition to exist. The judgment should be reversed and the cause remanded for trial. Plaintiff should recover costs.

BUSHNELL, C. J., and REID, and CARR, JJ., concurred with SHARPE, J.

North, J. (*for affirmance*). Because I am unable to find in this record any evidence tending to establish either actual or constructive notice (See 1 Comp. Laws 1929, § 4228 [Stat. Ann. § 9.596]) to defendant of the existence of a traplike defect in the sidewalk upon which plaintiff relies for recovery, I am of the opinion that the trial judge was correct in directing a verdict for defendant and entering judgment thereon. Also on another ground hereinafter noted the directed verdict and judgment entered should be sustained. It follows that I cannot concur in the result reached by Mr. Justice Sharpe.

It may be conceded that there is testimony in support of plaintiff's claim that *on the date of the accident* a traplike defect existed in the sidewalk; but there is no testimony that such traplike condition had existed for such a length of time as constituted constructive notice to defendant of a trap. No claim is made that defendant had actual notice prior to the accident.

Justice Sharpe in his opinion has referred to the testimony bearing upon the issue of notice. As I view that testimony it in no way tends to establish constructive notice of a traplike condition in the walk at the place where plaintiff fell. One of the two witnesses to whose testimony my Brother refers was Mrs. Dorothy Taylor. The whole import of her testimony, so far as it relates to notice, was as follows:

"The defect was caused originally by the root of a tree.  *  *  *  During the preceding summer  *  *  *  there was this slight raise in the sidewalk (indicating). I put some cement in that. I patted the cement in with my hand  *  *  *  real good and hard.  *  *  *

"*Q.* Now, how much cement had you put in there with your hand that preceding summer? Tell the court, as near as you can, how much.

"*A.* Well, there were two places I repaired. One, I should think took about a couple handfulls, and the other, about the same.

"*Q.* So you used about four handfulls of cement at the time you repaired it, is that correct?

"*A.* Yes, sir."

Not only does the foregoing testimony wholly fail to disclose a defect in the walk in the nature of a trap, but other portions of the witness' testimony disclose that she could not identify either of the two defects to which her testimony referred as being the defect which caused plaintiff's fall. Upon being shown plaintiff's exhibit 1, which was a photograph of the defect upon which plaintiff relies for recovery, this witness testified:

"I couldn't tell from this photograph, plaintiff's exhibit 1, if the portion toward the left side of the picture is the place where I put the cement."

The other witness referred to by Justice SHARPE was Carolyn Dipiazza, a 16-year-old girl, who lived in the immediate vicinity where plaintiff fell. So far as constructive notice was attempted to be shown by this witness, her testimony was as follows:

"I have noticed the sidewalk there near this driveway. * * * There is a little bump. I never paid much attention to it. * * * I rode my bicycle over it once, I never tried again. I have been familiar with the sidewalk a couple of years. * * * That bump was there for quite a long time but I never paid much attention to it until I rode the bike. * * * I can't tell definitely what happened then. I was on the ground. I was just laid out riding a bike.

"*Q.* What did happen to this bike that you were riding? Did you go over the place in the sidewalk?

"*A.* Well, I can't definitely tell that but I went on one side, the bike slid.

"*Q.* Did you fall?

"*A.* Yes, on the side.    *    *    *

"*Q.* Carolyn, was there a change in the bump through the months after the spring (of 1945) when you saw it first?

"*A.* No, I don't know really. I can't, you know. When you look at a bump you say 'well, there is a bump.'"

The witness further testified that the bump to which she had referred was not removed until after plaintiff's accident. As to whether this witness' testimony referred to the same imperfection in the walk where plaintiff fell, should be determined in the light of the further testimony given by the witness, which we quote:

"I am shown a photograph, plaintiff's exhibit 5. I do not recognize the scene that that shows in it. I never looked close at the sidewalk. I did not notice the sidewalk when I went by it in the fall of 1945."

Even if it be assumed that a jury might find that the testimony of this witness referred to the defect in the sidewalk where plaintiff fell, still as I read the testimony there is nothing in it tending to show that the defect in the sidewalk at the time witness observed it was *a traplike defect* such as plaintiff relies upon and must rely upon for recovery in this case. The foregoing presents all of the testimony upon which plaintiff can rely as proof of constructive notice. But that testimony discloses only that there was an imperfection in the condition of the walk. It falls far short of tending to show that there existed prior to the accident anything in the nature of a traplike defect, which was essential to recovery by plaintiff. Under such a record the trial court would have erred had it submitted to the jury as an issue of fact the question of constructive notice.

Plaintiff relies much on *Cornell* v. *City of Ypsilanti,* 212 Mich. 540.   But the opinion in the *Cornell Case* discloses that (unlike the instant case) plaintiff therein offered proof of the existence over a long period of the traplike defect.   Justice FELLOWS, writing for the Court, said:

"But the undisputed testimony was that it had existed for several years and the alderman of the ward in which it was located and who was chairman of the committee on streets and walks knew of it during its existence.   It was not a latent defect and had existed for so long that the city was chargeable with notice of its condition.   *   *   *   It is obvious that if this depression was of the character claimed by defendant, *its notice was of that condition only,* but it is equally obvious that if the depression was of the character claimed by plaintiff its notice was of that condition."

The record now before us fails to bring plaintiff's case within the holding of the *Cornell Case,* wherein competent testimony that the traplike condition of the walk had existed over a long period of time and in consequence thereof an issue of fact was presented for the jury.   The record is not such in the instant case.

Another phase of this record which justified the trial court in directing a verdict is this.   In support of its motion at the close of plaintiff's proof for a directed verdict defendant assigned, among others, the following reason:

"That the plaintiff is attempting and has endeavored to change her position from what it was under the original claim as filed with the city commission, as evidenced by the written claim filed, and is at variance from the declaration now on file, and as shown by the witness whose testimony was submitted."

In cases of this character the statute (1 Comp. Laws 1929, § 4230 [Stat. Ann. § 9.598]) specifically provides that: "The notice will specify the location and nature of said defect." The notice which plaintiff served on defendant city in so far as it pertained to a claimed defect in the sidewalk read:

"I was tripped by an obstruction on the sidewalk * * * which was caused by the raising of a flag on the sidewalk by the roots of a tree nearby."

But plaintiff's declaration and the defect which she sought to prove were of a different character as indicated by the following quoted from her declaration wherein she alleged:

"Yet the said defendant * * * permitted to exist on said sidewalk a dangerous cavity and obstruction, to-wit, said sidewalk was broken and a depression existed thereon leaving the edge sharp, raised and overhanging in such a manner as to cause a hazardous and dangerous condition to pedestrians walking over it in a southerly direction."

Under the testimony construed most favorably to plaintiff the variation in the height of the two slabs of the walk where plaintiff fell was less than two inches. Under the notice given to defendant city plaintiff could not have recovered; but she would be entitled to recover, so far as this phase of her case is concerned, if she proved the nature of the defect in the walk as alleged in her declaration. Under the settled law in this jurisdiction there is a controlling difference in the liability of a city between a case where a person is "tripped by an obstruction on the sidewalk" which obstruction is less than two inches in height (*Northrup* v. *City of Pontiac,* 159 Mich. 250), as disclosed in the instant case; and a case wherein a plaintiff is injured by reason of a traplike defect in the nature of "a dangerous cav-

ity'' resulting from the sidewalk being ''broken and
a depression existed thereon leaving the edge sharp,
raised and overhanging in such a manner as to cause
a hazardous and dangerous condition to pedestri-
ans.'' Thus the substantial and material variation
between the notice plaintiff gave to the city and
the allegations in her declaration of facts she sought
to prove as a basis of recovery quite conclusively
appears.

While Justice SHARPE in support of the proposi-
tion that ''We have been inclined to a liberal con-
struction of statutes requiring notice of claims, et
cetera,'' refers to three Michigan decisions, I fail
to find that any of these cases sustain his conclusion
relative to the phase of the instant case now under
consideration—*i.e.*, a fatal variance between the no-
tice served on the city and the cause of action alleged
and sought to be proven.

As noted in my Brother's opinion it is said in
*Ridgeway* v. *City of Escanaba,* 154 Mich. 68, wherein
the plaintiff was denied recovery, this Court has
''been inclined to favor a liberal construction of stat-
utes requiring notice of claims'' against cities and
has not denied relief where there was substantial
compliance with the statute. However, that such
liberality is not without limitation or so broad that
it practically abrogates the statute is plainly indi-
cated by the holding in the *Ridgeway Case* as stated
in a headnote.

''A notice to a city of a claim for personal injury,
filed pursuant to section 3173, 1 Comp. Laws [1897],
which describes the injury as a 'dislocated and
broken right shoulder blade' is not sufficient upon
which to base a recovery on proof of a broken and
dislocated collar bone upon the left side.''

We are not in the instant case at all disposed to
depart from our holding in *Pearll* v. *City of Bay*

*City,* 174 Mich. 643, cited by my Brother. Our hold-
ing there, as indicated in the headnotes, was only
to the effect that in a suit of this character there
was substantial compliance with the statute by
plaintiff ''who filed an affidavit and statement of
claim in distinct papers, referring to each other and
attached together, (setting forth) the facts as to the
nature and extent of plaintiff's injuries appearing
in the statement annexed to the affidavit.''

The remaining Michigan decision cited by my
Brother on this phase of the case is *Knapp* v. *City
of Detroit,* 295 Mich. 311. But decision in this cited
case has no bearing whatever on the issue of a fatal
variance between a notice to the city and the cause
set up in a plaintiff's declaration. Instead the
*Knapp Case* merely holds that the written notice
served on the city, though not under oath, was suf-
ficient, notwithstanding the city charter provided
that such notice should be ''under oath;'' since the
controlling statute (1 Comp. Laws 1929, § 4230 [Stat.
Ann. § 9.598]) does not require a sworn notice.

It seems quite impossible to escape the conclusion
that the phase of the instant case now under con-
sideration is definitely controlled by our holding in
*Harrington* v. *City of Battle Creek,* 288 Mich. 152,
and cases cited therein. The striking similarity of
the *Harrington Case* to the instant case appears
from the following headnote.

''Variance between notice of claim against city in
which defect in sidewalk was stated as being 20
inches long, 2 inches deep, and about 25 inches wide
and amended declaration in which it was alleged
plaintiff's toe was trapped by a projection over the
opening which caused her to fall, was of substance,
and defect upon which liability was sought not hav-
ing been in notice of claim given city, recovery from

it is barred, as notice is a condition precedent to recovery.''

Another paragraph of the headnotes in the *Harrington Case* reads:

''Purpose of notice of claim to city for injuries caused by defective sidewalks is not alone to afford opportunity for investigation but as well to confine plaintiff substantially to the character of the defect alleged in the notice and claimed to have caused injury and consequent liability of the city.''

In deciding the *Harrington Case* we did not overlook *Cornell* v. *City of Ypsilanti, supra,* upon which plaintiff relies. Justice WIEST in writing for the court in the *Harrington Case* said:

''Had the notice of claim stated the nature of the defect and the cause of injury, as set forth in the amended declaration there might be liability. *Cornell* v. *City of Ypsilanti,* 212 Mich. 540.''

No reason is pointed out why we should depart from or overrule our holding in the *Harrington Case.* The trial judge in directing verdict for defendant in the instant case acted in full accord with our holding in the *Harrington Case;* and for that reason, as well as for the reason hereinbefore noted, the judgment entered in the trial court is affirmed.

It is so ordered, with costs to appellee.

BOYLES, DETHMERS, and BUTZEL, JJ., concurred with NORTH, J.