CAMPBELL v CHARLES J. ROGERS CONSTRUCTION COMPANY

1. WITNESSES—EXPERT WITNESSES—HYPOTHETICAL QUESTIONS—SAFE-GUARDS—CROSS-EXAMINATION—REFRAMING HYPOTHESIS.

   There is no rule requiring that all material facts be included in the hypothetical questions put to expert witnesses; and the safeguards are that the adversary may on cross-examination supply omitted facts and ask if the opinion would be modified by them, or that the trial judge, if the question is unfair, may require that the hypothesis be reframed to supply an adequate basis for a helpful answer.

2. WITNESSES—EXPERT WITNESSES—CROSS-EXAMINATION—DISCRETION—OBJECTIONS—PROPER GROUNDS—APPEAL AND ERROR—PRESERVING QUESTION.

   Cross-examination of expert witnesses cannot be divorced from the general rule that the scope of cross-examination falls within the trial judge's discretion, and where an objection which fails to state the proper grounds is overruled there is no abuse of discretion and any error which may have occurred has not been saved for review.

3. APPEAL AND ERROR—COURTS—JURIES—INSTRUCTIONS—MISLEADING INSTRUCTIONS—EVIDENCE.

   A jury must accept the law as it is stated by the judge and must accordingly follow the law as given and therefore it is reversible error for a court to give a jury instruction sua sponte which introduces an issue not supported by the evidence and which is misleading.

Appeal from Genesee, Ollie B. Bivens, J. Submitted Division 2 December 3, 1974, at Lansing. (Docket No. 18402.) Decided February 11, 1975.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am Jur 2d, Expert and Opinion Evidence § 53 et seq.
Propriety of hypothetical question to expert witness on cross-examination. 71 ALR2d 6.

[3] 75 Am Jur 2d, Trial §§ 574, 651.

Complaint by Donald M. Campbell against Charles J. Rogers Construction Company for injuries received in an automobile-truck collision. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Barkey & Barkey, P. C.,* for plaintiff.

*Thomas & Delaney,* for defendant.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and VAN VALKENBURG,* JJ.

D. E. HOLBROOK, P. J. Plaintiff brought suit in Genesee Circuit Court to recover for personal injuries suffered as a result of a collision between an automobile in which he was a passenger and a truck owned by the defendant. The collision occurred on October 12, 1970. Trial was had and on August 14, 1973, the jury found in favor of the plaintiff and assessed damages in the amount of $50,000.

As a result of the automobile-truck collision, the plaintiff's head struck the windshield of the car and he sustained head lacerations which were treated at a hospital. It was the plaintiff's testimony that his left hand had struck part of the dashboard and that his right hip had caved in the whole glove box area of the dashboard. Four days after receiving treatment at the hospital, the plaintiff visited his family physician, Dr. Richard M. Lundeen, who placed him on sick leave from October 12, 1970 to January 1, 1971. The plaintiff testified that he began having dizzy spells in December of 1970. The plaintiff returned to work and was given a job where he could stand up or sit

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

down when he wanted to. Plaintiff testified that there was no strenuous lifting and his back seemed to improve. The plaintiff testified that in August of 1972 he was transferred to a new job where he was standing on an assembly line working for eight hours a day. Plaintiff testified that in September of 1972, after about a month of work on the production job, he passed out while doing the work. Plaintiff was advised to go home and see his family physician. The dizziness and back pain persisted and the plaintiff consulted with Dr. Morton J. Stanley, commencing on October 23, 1972. Dr. Stanley placed the plaintiff on sick leave on October 23, 1972. Plaintiff was still on sick leave at the time of trial.

On October 22, 1972, the plaintiff was involved in another automobile accident, but testified that he was not injured. A Flint policeman was at the scene of the second accident. The officer testified that, according to his report, only one of the five people in the car in which plaintiff was riding was injured and that plaintiff was not that one. At trial, the deposition of Dr. Richard Lundeen was read into evidence. At the taking of the deposition, both defense counsel and plaintiff's counsel were present.

Plaintiff contended that he did not receive injury as a result of the second accident and that the injuries described by the medical doctors who saw him after the date of the second accident were attributable to the first collision involving defendant. It was defendant's theory that the injuries complained of at the trial were solely the result of the second accident and that the only properly allowable measure of damages was a bill to Dr. Lundeen in the amount of $40, and three months of lost wages for the time plaintiff missed work

immediately following the first collision. The trial court charged the jury quite extensively. The court read to the jury the theory and claim of the respective parties. In defendant's theory and claims in the case, the role of the second accident was clearly spelled out. The trial court charged the jury on aggravation of a preexisting condition. Defense counsel lodged his objection to the instruction on aggravation. The trial court ruled that plaintiff should be allowed to amend his pleadings to include aggravation of a preexisting injury.

The trial court denied defendant's motion for a new trial and defendant now appeals.

I

Defendant asserts that the allowance of a hypothetical question to be read in the presence of the jury was prejudicial error "since the intent of the plaintiff's counsel must have been to confuse and mislead the jury by asking a hypothetical question on an assumed fact which was not in fact true and because the opinion thus admitted into evidence surely went to the substantive issue of causation and the extent of injuries suffered". We disagree.

The hypothetical question here at issue, from the deposition of Dr. Lundeen, appeared during trial as follows:

" 'Q. (by Walter Barkey, plaintiff's attorney): Doctor, I'm going to ask you this question: using as a background your knowledge of Donald Campbell and the care and treatment that you afforded him for the automobile accident and injuries as you have described, I want you to assume that since he left your care in December of 1970, that he has had continuous back pain, dizziness, headaches, fainting and black out episodes for a period up to and including the present; that he has been attended to by other medical specialists for

these complaints, and that they have examined him and treated him. And absent another history of an injury or accident, could these physical difficulties that he has been having up to and including the present be causely related to the October, 1970 accident?

"  'A. I would have to say that they could be.

"  'Q. Why would you say that, Doctor?'

"Mr. Delaney (defendant's attorney): Your Honor, I'm going to at this time ask that that be stricken; because since that was taken there has been evidence that there was another accident. So the doctor was not made aware of that by the examining attorney, Mr. Barkey.

"Mr. Barkey: Judge, this is a hypothetical question. I can put—

"Mr. Delaney: But it's not consistent with the facts.

"Mr. Barkey: Now, the testimony is he was not injured in this other accident, so I don't see what the objection is.

"The Court: I will permit it for what it's worth. We do know there has been, and it's in the record, a subsequent accident.

"Mr. Barkey: Right.

"The Court: This is all things being equal and there was no other accident, and he wants an answer.

"I'll let it continue. I'll let him answer.

"Mr. Barkey: Because, Judge, I did say 'injury'.

"The Court: I have permitted you to go ahead. Now—

"Mr. Barkey: All right.

"The Court: —don't press your luck.

"Mr. Barkey: Your answer is what?

"  'The Witness: Well, we just know that some people after injuries like these will continue to have difficulty. Some will and some will not. And we have no other history that this man has had injuries bringing on similar types of symptoms.' "

In McCormick, Evidence (2d ed), § 14, p 34, it is said:

"The more expedient and more widely prevailing view is that there is no rule requiring that all material

facts be included. *The safeguards are that the adversary may on cross-examination supply omitted facts* and ask the expert if his opinion would be modified by them, and further that the trial judge if he deems the original question unfair may in his discretion require that the hypothesis be reframed to supply an adequate basis for a helpful answer." (Footnotes omitted.) (Emphasis supplied.)

Thus, the key factor in protecting against errors in hypothetical questions is cross-examination. The burden is shifted to the cross-examiner to ascertain the factual assumptions used by the expert. 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Author's Comments to Rule 605, p 386. See also *Lake Oakland Heights Park Association v Twp of Waterford,* 6 Mich App 29, 33; 148 NW2d 248, 250 (1967).

We find that the objection made was inappropriate in that it failed to inform the trial judge of the proper reason for objection. Trial counsel informed the court that the examining doctor had not been informed of the second accident. Counsel now claims that at the time of taking the deposition he had no knowledge of the second accident to inquire upon. He failed to inform the trial court of this fact. Having failed to specify the proper grounds for objection, any error which may have occurred has not been saved for review. See generally *Hendershot v Kelly,* 11 Mich App 173, 180; 160 NW2d 740, 743 (1968).

In *People v Flenon,* 42 Mich App 457, 467; 202 NW2d 471, 477 (1972), Judge BRONSON wrote:

"Cross-examination of expert witnesses cannot be divorced from the general rule that the scope of cross-examination falls within the trial judge's discretion. *People v Taylor,* 386 Mich 204; 191 NW2d 310 (1971); *People v McClure* 29 Mich App 361; 185 NW2d 426

(1971); *People v Shugar,* 29 Mich App 139; 185 NW2d 178 (1970). The failure to find an abuse of discretion supports our rejection of this alleged error."

## II

During the course of instructing the jury, in an otherwise fine and detailed discussion of the relevant law, the trial judge *sua sponte* charged the jury as follows:

"A person who receives an injury has but one right of action. This is the one and only time that this plaintiff goes before a jury. So if this plaintiff is entitled to recover at all, he's entitled to recover fully for those injuries and the past, present and future damages.

"Now, there's been testimony of a second accident. Although the testimony, as I recall it, states that he was not injured in the accident of December the 22nd of 1972, I think that perhaps I should—I think I should give you this instruction; since it has been alluded to, the second accident, I think I'd better give you something on preexisting condition and aggravation.

"If Donald Campbell was not in good health or suffered from existing infirmities of the body at the time of the said—the second accident, you must be careful not to place the blame for the previous condition upon the defendant. You cannot award any damages for a condition that existed before the accident in question, if any. However, if there was an aggravation or worsening of a condition because of a preexisting injury, it is an injury for which he may recover. This is even true if an existing condition made him more susceptible to injury than a normal healthy person would have been, and even if a normal person probably would not have experienced any substantial injury from the accident.

"I'm only giving you that because it's—it's been alluded to and it's been brought out about a subsequent accident, and there's been argument to that effect and testimony."

Outside of the hearing of the jury the following occurred:

"*Mr. Delaney:* The defense was satisfied with the instructions as such, your Honor, with the exception of one related to aggravation. It's the defendant's position that aggravation was not pleaded, argued, nor was there any amendment made to the pleadings to have aggravation even possibly comply with the proofs as they were submitted to the jury. That the sole issue of the second accident was that it was completely new and unrelated to the first and not an aggravation of the preexisting condition. I—

"*Mr. Barkey:* Your Honor, it was an issue interjected in the case by the defendant; and if it brought up aggravation, I would like to amend my pleadings to plead it.

"*The Court:* I'll permit the amendment because of this fact: That the argument and that the proofs produced or what the defense was trying to show, that the sole cause of this man's or the plaintiff's injuries or his complaints primarily resulted from the accident—the second accident.

"Because you even argued that he worked a year and a half and that he never complained, and all—that his bills all ballooned or magnified after the second accident. And, I believe that based upon that theory and that interpretation, that I was duty-bound to at least give them that portion of that charge, because it was undisputed that he was injured in the prior accident."

Defendant asserts that it was reversible error for the trial court to give this instruction as it introduced an issue not supported by the evidence. We agree.

Read literally, this instruction could properly have related to a case where the individual responsible for the second accident was liable for an aggravation of a previous condition. The person causing the second accident was not a party to this

suit and therefore the instruction was improper. There was no assertion that any of plaintiff's injuries were the result of aggravation of a condition which existed prior to the first accident.

We are not unaware that we view the instructions as a whole. See for instance *Pratt v Berry,* 37 Mich App 234; 194 NW2d 465 (1971). However, we find this instruction merits a retrial.[1]

The instruction submitted to the jury was in a field of inquiry which was not within the testimony, and which invaded defendant's right to fair trial and was prejudicial error.[2] See *Lord v Winningham,* 307 Mich 300, 305; 11 NW2d 897, 899 (1943). A jury must accept the law as it is stated by the trial judge and must accordingly follow the law as given. 6 Callaghan's Michigan Pleading & Practice (2d ed), § 38.106, p 140. This is not a case like *Garceau v Ishpeming-Negaunee Hospital Association,* 13 Mich App 680; 164 NW2d 672 (1968), where this Court concluded that the instruction was not misleading and that no one could deny the

---

[1] SJI 30.04 is entitled "Element of Damage—Aggravation of Preexisting Ailment or Condition." The Note on Use states:

"Use this instruction if the proof justifies submitting the issue of aggravation of a preexisting ailment or condition. Insert language describing the particular aggravation, such as increased 'pain in his left leg,' or 'disability from loss of sight.' This instruction as completed is to be inserted in Instruction 30.01. [Measure of damages—personal and property]."

See the comment thereafter and the three cases discussed, which are factually distinguishable from the present case.

[2] See also *Lipton v East Detroit Art Theatre,* 12 Mich App 548, 550; 163 NW2d 249, 250 (1968), where this Court stated:

"It is undisputed that the court, in its instructions to the jury, assumed the existence of certain facts when no evidence of such facts existed. Defendant argues on appeal, however, that as the trial was brief and the testimony clear, no prejudice resulted from the trial court's erroneous comment.

"We disagree. The evidence presented could not have been so very clear if it allowed for confusion in the court's mind. It is impossible to ascertain the degree of influence which the misstatement of facts had on the jury, and therefore, we cannot say that no prejudice resulted.

accuracy of the instruction in question. Contrariwise, in this case the inaccuracy of the instruction is undeniable. It was misleading.

Reversed and remanded for a new trial. Costs to defendant.